# EXHIBIT G

| | |
|---|---|
| DISTRICT COURT, CITY & COUNTY OF DENVER, COLORADO<br>1437 Bannock Street, Room 256<br>Denver, CO 80202 | DATE FILED: October 15, 2021 6:28 PM<br>FILING ID: 8E862D78BF6CD<br>CASE NUMBER: 2020CV33621 |
| **Plaintiff**: JEFFREY LITTLE, individually and on behalf of all similarly situated persons<br><br>v.<br><br>**Defendant**: WENDY'S INTERNATIONAL, LLC | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales, Atty. Reg. # 29775<br>THE LAW OFFICES OF BRIAN D. GONZALES, PLLC<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Telephone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Alexander Hood, Atty Reg. # 42775<br>HOOD LAW OFFICE, PLLC<br>PO Box 24753<br>Silverthorne, CO 80497<br>Telephone: (720) 381-4142<br>Alex@HoodLawPLLC.com | Case No.: 20-CV-33621<br><br>Courtroom: 269 |
| **RESPONSE TO DEFENDANT'S BRIEF ON DISCOVERY ISSUES** | |

## INTRODUCTION

Plaintiff's discovery requested names, contact information, and timekeeping records for a 25% sample of the putative class of thousands in this case. *See* Ex 1, Discovery Responses at Interrogatory 11, Req. for Production 10. Plaintiff also requested the number of employees included in the proposed class. *Id.* at Interrogatory 7. Defendant ("Wendy's") refused to respond and that spurred the July 1, 2021 discovery dispute hearing. There, the Court ordered Wendy's to produce names and contact information for a random sample of 100 class members. The Court instructed Plaintiff to conduct his proposed survey on that sample and return to the Court with results if

1

Plaintiff desired a broader sample.

Plaintiff conducted the survey and returned to the Court with eight completed surveys from class members, all indicating missed breaks. *See* Ex. 2 at Exhibit 1, Completed Surveys.[1] The Court held a hearing on expanding the sampling, including requested timekeeping records, on September 10, 2021. After oral argument, the Court indicated it likely would permit expanded sampling, but allowed briefing on the issue at Wendy's request. This brief responds to Wendy's brief on the issue and requests:

1. That Wendy's indicate the number of employees in the proposed class.

2. Names and contact information for a 25% random sample of the proposed class.

3. Timekeeping data for a 25% random sample of the proposed class.

4. That Wendy's proposed depositions of survey respondents be limited to five three-hour voluntary depositions of randomly selected survey respondents, with leave to return to the Court to justify the need for additional depositions after completing the initial five.

## ARGUMENT

### A. Plaintiff Conferred in Good Faith Prior to This Briefing

While Wendy's rejected Plaintiff's proposed compromises, Plaintiff conferred in good faith prior to this briefing to try to reach a compromise. The parties held a lengthy phone call and Plaintiff confirmed his position by email following the phone call. *See* Ex. 3, Conferral Email.

### B. Plaintiff Is Entitled to Discovery to Support His Motion for Class Certification

Wendy's argument that Plaintiff is not entitled to discovery to meet his burden on class

---

[1] As the declaration submitted by Mr. Gomez, who conducted the survey, explains, the hundred-person sample included significant incorrect and unusable contact information. *See* Ex. 2 ¶ 12. Given this, the eight responses are significant. And the propensity for sample information to contain significant error counsels that a larger sample will be necessary to obtain meaningful results.

2

certification because the case is not suitable for classwide treatment is absurd. It is Plaintiff's burden to meet the elements of class certification and this Court has set a discovery period for class certification just for this purpose. Newberg on Class Actions, the seminal class actions treatise, puts it succinctly:

> The plaintiff bears the burden of proof in moving for class certification: she must demonstrate that the case meets all of the requirements of Rule 23(a), fits into one of the categories of Rule 23(b) and that counsel meets the requirements of Rule 23(g). ***If facts are contested with regard to any of these issues, the plaintiff is entitled to develop those facts through the formal discovery process.***

Newberg on Class Actions § 7:14 (5th ed.) (emphasis added). The Federal Judicial Center's Manual for Complex Litigation agrees:

> Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof….

Manual for Complex Litigation, Fourth, § 21.14.

If Wendy's believed discovery regarding the elements of class certification was inappropriate, it should not have agreed to a case management order designed to do just that. And, regardless, the discovery is appropriate and the norm because "it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981). The alternative, allowing defendants to unilaterally declare that plaintiffs should not be permitted discovery on the issue, would universally kill class actions in their infancy. *See, e.g.,* Ex. 1, Wendy's Discovery Response (repeatedly objecting to discovery on the elements of class certification because "this case is not appropriate for class treatment").

Wendy's attempts to place a barrier in front of Plaintiff's right to discovery, claiming that

Plaintiff's must make a prima facie showing that discovery will "is likely to produce substantiation of the class allegations." *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985). While this standard has never been adopted by a Colorado court, it is nevertheless easily met.

Plaintiff's class claims are straightforward: Plaintiff alleges Wendy's fails to compensate its employees for breaks that are legally required by state law and were not provided. And proof of these claims should be simple. Wendy's maintains timekeeping records showing when breaks are and are not provided. *See* Ex. 4, Excerpt from Plaintiff's Timekeeping Summary. During conferral, Plaintiff offered to rely solely on these timekeeping records for class certification, and forgo class member sampling, if Wendy's would stipulate that its own timekeeping records are accurate.[2] Indeed, if these timekeeping records are accurate and show, through simple math, all missed uncompensated breaks, what more would be necessary to prove or rebut the existence of the proposed class?

But Wendy's rejected that offer, claiming its own timekeeping records are inaccurate because, according to Wendy's, while it requires its employees to punch out for breaks, its employees in fact do not. Given this intransigence, Plaintiff requests the following, which is "likely to produce substantiation of the class allegations." *Mantolete,* 767 F.2d at 1424.

First, Plaintiff requests **the timekeeping records for 25% of the proposed class.** Plaintiff believes the timekeeping records showing substantial missed breaks are in fact accurate. Plaintiff testified in his deposition that he, consistent with Wendy's policy, *always* clocked in an out for his breaks:

    Q:  And did you always clock in and clock out?

---

[2] These punch records should show rest *and* meal breaks. And while Wendy's is quick to point out that Mr. Little usually received his lunch breaks, usually is not always. In any event, the time keeping records will be definitive. M of the current survey respondents indicated they did not receive all legally required meal breaks. *See* Ex. 2 at Exhibit 1.

4

> A:  I always did.
> Q: You always clocked in for lunch breaks?
> A: Clocked out for lunch, clocked in from lunch.  When they happen.  When I had the few 10s that I did, there's a break out and break in.  So I was -- you know, I always used my -- whatever finger I chose -- all recorded.
> …
> Q: Do you see in the middle of the page there it says, It is your responsibility to clock in and out for the time you are working?
> A:  Yep, and when I clocked in for work, I clocked in, and when I clocked out for work, I clocked out. When I was finally told to do a break, I would break in or break out if it was the rare ten. And if it was a lunch break, I would then clock out and clock in when those eventually

Ex. 5, Little Depo, 77:20-78:4, 87:2-87:12.

Second, because Wendy's disputes the accuracy of its own timekeeping records, **Plaintiff requests names and contact information for 25% of the proposed class**. Plaintiff needs this information to conduct a basic survey to establish whether class members missed legally required breaks, whether class members were compensated for these missed breaks, and whether class members were required to clock in and out—like Mr. Little—for breaks they received.

Plaintiff is willing to accept a much smaller sample of class members if Wendy's will agree not to challenge the survey results on the basis of the sample being too small. *See* Ex. 3, Conferral Email. Wendy's refused this compromise. *See* Wendy's Opening Brief at 1. Obviously, Plaintiff is not willing to compromise on a smaller sample if Wendy's is intent on preserving an argument that the sample size it agreed to is too small.

Finally, Wendy's also argues that Plaintiff should not be entitled to discovery regarding workers from more than one restaurant where Plaintiff worked. First, this ignores that Mr. Little alleges he worked at multiple locations. *See* Complaint ¶ 15 ("Plaintiff worked at several of Defendant's store locations."). Mr. Little testified that he worked at five of Wendy's locations in his deposition:

> Q   I wanted to go back to – you identified three other Wendy's that you

5

> worked at besides the Broadway location.
> A    So if you count my location, it's actually four. 'Cause you've got my location I will count as one. You've got Coal Mine and Kipling. You've got Mineral -- the primary intersection is 40th and Wadsworth, but I think it's like a block back.

Ex. 5, Little Depo. at 118:1-118:9, 122:20-122:23 (remembering a fifth location). And Mr. Little's testimony regarding Wendy's policies was not limited to a particular store. If Mr. Little missed breaks and was not compensated at five of Wendy's stores and eight additional randomly selected class members also submitted surveys indicating they missed breaks and were not compensated, this is sufficient to permit discovery on a proposed Colorado-wide class. *See* Ex. 2 at Exhibit 1, Completed Surveys. Surely the requested discovery from all Colorado stores is "likely to produce substantiation of the class allegations." *Mantolete,* 767 F.2d at 1424. This is particularly true given the existence of electronic timekeeping records showing breaks received and breaks missed. *See Sobolewski v. Boselli*, 2018 WL 3838140, at *3 (D. Colo. June 13, 2018) ("[T]he existence of computerized payroll records has been found to support class certification…."). The alleged policy—not paying for missed breaks—is also by its nature company-wide because Wendy's states its timekeeping and payroll software is ubiquitous across stores. *See* Ex. 1, Wendy's Discovery Response at 2 (indicating Colorado-wide use of "Aloha" timekeeping and "Oracle" payroll); *see also* https://www.ahola.com/time-attendance/ (Aloha webpage); https://www.oracle.com/human-capital-management/payroll/ (Oracle webpage).

The cases Wendy's cites for the proposition that class discovery should be limited to a location where Plaintiff worked are distinguishable. The *Avendano* case[3] was a FLSA collective action. Putting aside the fact that a FLSA collective action is not a class action, it is upside down and backwards to cite a decision on certification for the proposition that discovery should not be

---

[3] Plaintiff's counsel Alexander Hood represented the plaintiff there.

permitted prior to a motion for certification. Moreover, the *Avendano* case eventually was certified nationwide, across all locations, based on ***discovery***. *See generally Avendano v. Averus, Inc.*, 2016 WL 11692372 (D. Colo. Sept. 29, 2016). Plaintiff is exercising his right to conduct discovery to meet his burden to certify the Colorado-wide Rule 23 class he alleges. And Plaintiff's requested discovery is substantially justified on the record developed before this Court through multiple hearings and multiple rounds of briefing.

Finally, federal cases limiting sampling are also distinguishable because of differences between Colorado and Federal rules. In Colorado, all parties are required to disclose names and contact information for every person that has relevant discoverable information. *See* CRCP 26(a)(1)(A). In contrast, the federal disclosure requirement is much more limited; requiring only disclosure of names and contact information for witnesses that the disclosing party intends to use for its case. *See* FRCP 26(a)(1)(A). In this Colorado state court, the Colorado rules apply. And under the Colorado disclosure standard, Plaintiff is entitled to the names and contact information ***for the entire class*** as a matter of right because they are all, at a minimum, witnesses with relevant information. But given proportionality and efficiency considerations, Plaintiff requests only 25%. Again, if Wendy's were willing to stipulate to a smaller sample being representative, Plaintiff would consider that as well. *See* Ex. 3, Conferral Email.

### C. Plaintiff Is Entitled to Conduct His Own Survey Without Wendy's Proposed Discovery "Disclosures"

Next, Wendy's transparent attempt to chill survey responses through its proposed discovery "disclosure" should be rejected. Most fundamentally, unlike required court-approved notices following class certification, *see* CRCP 23(c)(2), Plaintiff's survey is not a court-supervised notice of class member rights and responsibilities. Rather, it is a private communication with potential class members by a plaintiff investigating a class action. Thus, the survey and its contents are

7

protected speech under the First Amendment of the Constitution.

The United States Supreme Court wrestled with the balancing of First Amendment concerns against the burden of potential abuses by counsel in contacting potential class members and recommended caution to courts considering imposing restraints:

> We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order. Although we do not decide what standards are mandated by the First Amendment in this kind of case, we do observe that the order involved serious restraints on expression. This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses.
>
> We recognize the possibility of abuses in class-action litigation, and agree with petitioners that such abuses may implicate communications with potential class members. But the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules.

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103–04 (1981).

This Court should be similarly cautious. With no record indicating any intent of abuse, the Court should give Plaintiff the benefit of the doubt in exercising his constitutionally protected speech. Wendy's has no right to invade and restrict Plaintiff's speech with its suggested "disclosures."

Moreover, even in the context of required court-approved class action notices following certification, courts are loath to include "disclosures" regarding discovery obligations. *See Pennington v. Fluor Corp.*, 2019 WL 2537674, at *9 (D.S.C. June 20, 2019) (collecting cases and noting that requiring such a discovery disclosure is "unsupported by the current trend in case law"). Similarly, in court-mandated notices in Fair Labor Standards Act collective actions, courts frequently deny requests to include such "disclosures" because they have a chilling effect on participation. *See Oliphant v. Sprint Corp.*, No. 8:18CV353, 2019 WL 2088052, at *4 (D. Neb. Apr.

8

26, 2019) (citing *See Cox v. Gordmans Stores, Inc.*, 2016 WL 6962508, at *4 (E.D. Mo. Nov. 28, 2016) (plaintiffs not required to notify potential opt-in plaintiffs that they may be liable for certain cost or to travel for depositions as such language "would have a cooling effect on participation in the class and is contrary to the purpose of the FLSA"); *Prentice v. Fund for Pub. Interest Research*, Inc., 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) (finding that including a warning about possible discovery in an FLSA collective action would deter potential plaintiffs from joining suit); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010) (rejecting defendant's request that that the notice include a statement that opt-in plaintiffs will be subject to discovery obligations, depositions, and trial). As shown by the eight survey responses Plaintiff was able to collect from the first sample of 100 Wendy's employees, collecting such evidence is difficult and likely will be impossible if a survey is accompanied by Wendy's proposed warning.

Finally, even when these court-approved notices of Fair Labor Standards Act rights include some mention of discovery obligations, it is "to insure that [FLSA] opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions." *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *11 (E.D.N.Y. Feb. 1, 2011). Here, in a Rule 23 class action, warnings of discovery burdens are inappropriate because mandatory discovery on absent class members is extremely limited, or outright barred. *See infra* at 10-11. In other words, as explained below, Wendy's proposed warning is not only unnecessary, it is factually incorrect.

### D. Wendy's Request for "Survey Documents"

Plaintiff ***does not object*** to disclosing all completed surveys. Plaintiff does ask that the Court limit Wendy's to voluntary discovery from class members, including survey respondents. *See infra* at 11. For all of the reasons already in the record for the prior hearing, Plaintiff objects to Wendy's assertion that Plaintiff failed to provide completed surveys in the past. That is simply not true. *See*

9

Ex. 6 (email disclosing completed surveys under an agreement subsequently violated by Wendy's).

Plaintiff *does object* to producing the purported contract with his agent who he hired to conduct the surveys. Plaintiff has repeatedly told Wendy's in conferrals that no written contract exists and, in response to Wendy's purported concerns, provided a lengthy declaration from Plaintiff's agent describing the survey process. *See generally* Ex. 2., Dec. Plaintiff is frankly has nothing else to provide. Even if there were responsive documents, discovery demands in a brief are not appropriate discovery requests. If Wendy's believes it is entitled to something in discovery, Wendy's can serve a discovery request to which Plaintiff can raise all appropriate objections.

### E. Wendy's Is Not Entitled to Compelled Discovery of Absent Class Members, But Plaintiff will Consent to Voluntary Discovery

Wendy's offers a false equivalency between Plaintiff's proposed *voluntary* survey and Wendy's purported right to serve *mandatory* subpoenas on, and depose, members of the proposed class. Because of the efficiency policies undergirding class actions, absent class members are generally not required to do *anything*. "[A]n absent class-action plaintiff is not required to do anything" but "sit back and allow the litigation to run its course." *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 n.2 (1985). "[B]urdens" like discovery are "rarely imposed upon plaintiff class members." *Id.*

Plaintiff, of course, is fine with Wendy's pursing a voluntary survey similar to his own. But Wendy's asserted right to compel discovery from absent class members through judicial process is entirely unsupported by the caselaw. Such compelled discovery is only permitted if Wendy's can establish the following:

> (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to the discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent.

Newberg on Class Actions § 9:13 (5th ed.) (citing and quoting authorities). Wendy's has yet to address any of these factors. Moreover, these factors generally apply only to written discovery. "Deposing absent class members," as Wendy's proposes, "requires greater justification than written discovery." Manual for Complex Litigation, Fourth, § 21.41 (citing *Redmond v. Moody's Investor Service*, 1995 WL 276150, *2 (S.D. N.Y. 1995)).

Despite this, Plaintiff believes that depositions of absent class members would be helpful to resolving the factual disputes on class certification. Plaintiff therefore proposes that Wendy's be entitled to five depositions of randomly selected survey respondents. These depositions, like Plaintiff's survey, should be voluntary, not compelled by a subpoena, and limited to three hours each. If, after these five depositions, Wendy's believes it needs more depositions, then it should return to the Court and explain why. The Court found this sort of escalating iterative process appropriate for Plaintiff proceeding with class sampling and surveys and it should be equally appropriate for Wendy's proposed depositions of absent class members.

### F. Plaintiff's Proposal

Plaintiff therefore requests an order from the Court requiring the following:

1. **Wendy's to respond to Plaintiff's interrogatory requesting the number of people in the proposed class**. This is a simple request and plainly relevant to the first element of class certification: numerosity. *See* CRCP 23(a)(1). Wendy's has identified three categories of hourly non-exempt workers that worked in its Colorado stores. *See* Ex. 1, Wendy's Discovery Responses at Int. 7 (identifying "(1) crew, (2) shift manager, and (3) assistant general manager"). As requested in the interrogatory, Wendy's needs to provide the number of employees for each category during the relevant period.

2. **Wendy's to provide timekeeping records for 25% of the proposed class.** Wendy's has

provided a payroll summary for Plaintiff showing breaks provided and, through simple math, breaks missed. *See* Ex. 4, Excerpt from Plaintiff's Timekeeping Summary. Plaintiff has repeatedly requested the underlying timekeeping, *i.e.,* "punch" data for this summary, which should be available through Wendy's "Aloha" timekeeping platform. This timekeeping data should be provided for Plaintiff and 25% of the proposed class. While Wendy's claims this timekeeping data is inaccurate, Plaintiff disagrees. And ultimately the probativeness, or lack thereof, of the data should be left to the Court, not Wendy's.

3. **Wendy's to provide names and contact information (mailing addresses, email addresses, and phone numbers) for 25% of the proposed class.** Because Wendy's is insistent on repudiating the accuracy of its timekeeping records, Plaintiff intends to conduct a ***voluntary*** survey of the sample to inquiring about missed breaks, compensation for missed breaks, and whether Wendy's timekeeping systems were used to record breaks. Plaintiff is willing to agree to a smaller sample if Wendy's will agree that the smaller sample size is representative for the purposes of class certification. *See* Ex. 3, Conferral Email. But given the small response rate inherent in a voluntary survey of a sample with often incorrect contact data, the sample must still be large enough to yield usable results.

4. **Permitting Wendy's to initially take voluntary depositions of five randomly selected survey respondents. The depositions should be limited to three hours each.** After those five depositions, Wendy's is permitted to return to the Court to justify its need for additional depositions of survey respondents.

*s/*Alexander Hood
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all parties that have appeared.

                                                     *s/Alexander Hood*
                                                     Attorney for Plaintiff