IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-cv-03056-MEH

JEFFREY LITTLE, individually and on behalf of all similarly situated persons,

Plaintiff,

v.

WENDY'S INTERNATIONAL, LLC,

Defendant.

---

**UNOPPOSED[1] MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

### I.  INTRODUCTION

With the help of Anne Marie Estevez as a mediator, Plaintiff Jeffrey Little and Defendant Wendy's International, LLC (the "Parties") have reached a class-wide settlement for up to $3,950,000.00 for alleged violations under the Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101, *et seq.*, the Colorado Minimum Wage Act, C.R.S. §§ 8-4-101, *et seq.*, and the Colorado Civil Theft Statute, Civil Theft, C.R.S. § 18-4-405 *et seq. See generally* Ex. 1, Executed Settlement Agreement (the "Settlement"); Ex. 2, Proposed Notice. The Settlement is the result of over four years of litigation, in the Colorado state court, this Court, and the Tenth Circuit. As this Court is aware, the litigation has included intense discovery, extensive motion practice, and complex appeals. *See Little v. Wendy's International, LLC*, 2024 WL 4455858, at *1–3 (10th Cir. Oct. 10, 2024) (describing case history).

The Settlement meets all the criteria for preliminary approval pursuant to Rule 23(e)(1),

---

[1] The Parties have conferred, and Defendant does not oppose this Motion.

*i.e.*, the Settlement is within the range of reasonableness and warrants notifying the class and setting a final approval hearing. *See Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). The Settlement should be preliminarily approved pursuant to Rule 23(e)(1), and the proposed notice should be served on the class consistent with the terms of the Settlement.

## II.     THE SETTLEMENT

As part of the Settlement, and for the purposes of settlement only, the Parties have agreed to the certification of the following Rule 23 class:

> ALL CURRENT AND FORMER NONEXEMPT RESTAURANT EMPLOYEES ON RECORD WHO WORKED FOR ANY WEEK OR MORE AS A NONEXEMPT EMPLOYEE AT ONE OF WENDY'S CORPORATE RESTAURANTS IN COLORADO DURING THE CLASS PERIOD (OCTOBER 25, 2014 UP TO THE DATE THAT THE COURT ENTERS A PRELIMINARY APPROVAL ORDER)

Ex. 1, Settlement ¶¶ III (defining "Settlement Class"), I.G (defining "Class Period).

The Settlement provides that Defendant shall pay up to $3,950,000.00 in full and final settlement of this dispute for Plaintiff and the Settlement Class. *Id.* at ¶ I.G (defining "Gross Settlement Amount). Pursuant to the Settlement, Defendant will only pay claims made by Settlement Class Members on the class fund. *Id.* at ¶¶ I.D, V.D.7. However, regardless of the number of claims made on the fund, Defendant will pay no less than the Minimum Settlement Amount, which is defined as 50% of the settlement fund remaining after payment of attorney's fees and expenses, Plaintiff's service award, and notice and administration costs. *Id.* at ¶ I.M. Other than employer-side taxes and other incidental costs that Defendant may incur at its discretion, all required payments will be made from the $3,950,000.00, including all payments to settlement class members, attorney's fees, litigation expenses, settlement administration costs, employee-side taxes, and any enhancement award. *Id.* at ¶¶ I.L, V.D.1.This settlement amount is in consideration for a waiver and release by the Settlement Class of all claims that were brought, or could have

2

been brought, based on the allegations in the operative complaint. *Id.* ¶ V.C. Subject to Court approval, the Settlement provides for Plaintiff to receive an incentive award of $30,000.00 for his efforts made and risks undertaken in pursuing this case. *Id.* ¶ V.D.3. Also subject to Court approval, Class Counsel intend to request 40% of the Gross Settlement Fund to compensate them for attorney's fees and expenses. *See infra* at 11-17.

The amount allocated to settlement payments to the Settlement Class will be distributed on a pro rata basis based on work weeks worked. *Id.* ¶ V.D.7.b. For tax purposes, the settlement payments will be allocated 50 percent to W-2 wages and 50 percent to 1099 income. *Id.* ¶ V.D.7.i.

The Settlement Administrator will use text messaging and postcards to direct Settlement Class Members to a website that will host the Notice and Claim Form. *See* Exs. 2-4, Notice and Claim Form. Text messages will be sent to Settlement Class Members for whom Defendant has personal mobile phone numbers listed in its records. *Id.* ¶ V.B.2. Postcards will be sent to all other Settlement Class Members at their last known addresses. *Id.* The text message will be substantially similar to the following:

> THIS TEXT IS FROM A COURT-AUTHORIZED SETTLEMENT ADMINISTRATOR, OPTIME ADMINISTRATION. YOU MAYBE A MEMBER OF A CLASS OF CURRENT/FORMER WENDY'S HOURLY EMPLOYEES, WHO WORKED AT WENDY'S CORPORATE RESTAURANTS IN COLORADO, AND CAN RECEIVE MONEY FROM A COURT SETTLEMENT FOR UNPAID/UNPROVIDED BREAKS IN COLORADO. YOU CAN LEARN MORE AND MAKE A CLAIM ON THE SETTLEMENT FUND HERE: [INSERT URL]

*Id*. A proof of the proposed postcard is attached as Exhibit. 4. Settlement Class Members will also receive reminder texts and postcards no later than 10-days prior to the end of the Claims Period. *See* Ex. 1, Settlement ¶ V.B.6.

Settlement Class Members will have forty-five days after initial transmission of the text messages and postcards to make a claim on the Settlement, opt out of the Settlement, or file

objections. *See id.* ¶ I.E. Settlement Class Members are also invited to appear at the final approval hearing to be set by the Court. *See* Ex. 2, Notice § 9. Participating Class Members will receive checks for their pro rata share of the settlement amount. *See* Ex. 1, Settlement ¶ V.D.7.b. Funds from settlement checks that are not cashed will be distributed by the Settlement Administrator to Defendant. *Id.* ¶ V.F.3.

### III.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Pursuant to Fed. R. Civ. P. 23(e), court approval of a class action settlement takes place in a two-step process. The court first decides whether to give notice to the proposed class of the proposed settlement and second decides whether to approve the settlement. *See* Fed. R. Civ. P. 23(e)(1)-(2). This Motion asks the Court to undertake the first step of the analysis, *i.e.*, the Motion asks the Court to decide whether notice of the Settlement should be provided to the Settlement Class. *See* Fed. R. Civ. P. 23(e)(1).

For the Court to issue notice, the Parties must make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Thus, at the preliminary approval stage, the Court determines only whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

### A.   Amendment of Certified Class to Comport with Settlement Class

Taking the second Rule 23(e)(1) preliminary approval requirement first, Judge Scoville in the Denver District Court already conditionally certified a class in this case. *See* Doc. 1-6, Class Cert. Order. That Class remains certified in this Court because "[w]hen a case is removed, the federal court takes the case in its current posture and treats previously entered orders as its own." *See Adams v. ModernAd Media, LLC*, No. 12-CV-00513-PAB-MEH, 2012 WL 3039061, at *1 (D. Colo. July 25, 2012); *see also Hart v. Capgemini U.S. LLC Welfare Ben. Plan Admin. Document,*

4

547 F. App'x 870, 872 (10th Cir. 2013) ("After removal, the federal court takes the case up where the State court left it off." (citations and quotations removed)). To facilitate the Settlement, the Parties request that the Court amend the certified Class to the class definition defined *supra* at 2. The class definitions are substantially similar, with the only material difference being ending the class period on the date of preliminary approval rather than at "the present." Compare *id.* with Doc. 1-6 at 16, Class Cert. Order.

### B. The Court is Likely to Approve the Settlement Pursuant to Rule 23(e)(2)

To preliminarily approve a class action settlement and distribute notice to the Settlement Class, the Court must also find that it "will likely be able to … approve the proposal under Rule 23(e)(2)." *See* Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2) requires a finding that a proposed settlement "is fair, reasonable, and adequate." In the preliminary approval context, that requires a court to consider whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Motor Fuel Temp. Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted).

#### 1. The Proposed Settlement Was Fairly and Honestly Negotiated

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted); *see also In re Penthouse Executive Club Compensation Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. 2013) (granting preliminary approval of proposed settlement reached through negotiations that involved formal mediation, finding that the proposed settlement is non-collusive, as a settlement "reached with the help of third-party neutrals [which] enjoys a 'presumption that the settlement achieved meets the

5

requirements of due process'" (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *8 (S.D.N.Y. 2011))). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson*, 171 F.R.D. at 283 (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel, and the Settlement is the result of over four years of litigation—*see Little*, 2024 WL 4455858, at *1–3, Doc. 1-8, State Court Docket—and extensive formal and informal discovery regarding the merits of the claims and Defendant's defenses, *see* Ex. 5, Hood Dec. ¶ 10. Further, the settlement resulted from two day-long mediations before Anne Marie Estevez, an experienced mediator. *See id* ¶ 13. Through the extensive litigation and discovery, including Defendant providing voluminous payroll records for the Settlement Class in advance of mediation, each party gained ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel vigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

### 2. **The Settlement is Non-Collusive**

This case was hotly contested and litigated by the Parties. This lawsuit was originally filed on October 25, 2021. *See* Doc. 1-8, State Court Docket. This dispute involves a bona fide dispute between adversarial parties. Settlement of this matter—as reflected in this motion, the Settlement, and the lengthy dockets this Court, State Court, and the Tenth Circuit—was born of an adversarial process with all involved advocating for their clients. To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about

litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this factor also weighs in favor of approval of the Settlement.

### 3. Immediate Recovery Outweighs the Possibility of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

Here, Class Counsel retained a PhD statistician to build a damages model for mediation from payroll records provided for mediation. *See* Ex. 5, Hood Dec. ¶ 12. According to that model, the $3.95 million recovery represents compensation to the Settlement Class for approximately 83% of the allegedly missed breaks. *See id.* ¶ 12. Compensating for 83% of allegedly missed breaks takes into account the significant litigation risk—discovery, dispositive motions, and eventual trial on behalf of a class of over 17,000—and makes this significant recovery now outweigh the uncertainty of any future relief. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130-31 (D. Colo. 2016) ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial.").

### 4. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class

The Settlement requires the settlement fund be distributed to the class on a pro rata basis based on weeks worked. Ex. 1, Settlement ¶ V.D.7.b. This ensures that each class member receives a share of the settlement fund that is reasonably proportional to their work for Defendant and, thus,

7

reasonably proportional to opportunities for missed rest and meal periods while working for Defendant.

### 5. The Incentive Payment to Plaintiff Should be Preliminarily Approved

Pursuant to the Settlement Agreement, Class Counsel requests, and Defendant does not oppose, that the Court preliminarily approve an enhancement or "incentive payment" of $30,000 to the Named Plaintiff. "[N]amed plaintiffs…are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s] of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

While ultimately any incentive payment will be decided on final approval, the $30,000 amount proposed by the parties is at least within the bounds of reasonableness for preliminary approval purposes. A $30,000 incentive payment is also in line with incentive payments previously awarded in this District, including by this Court. *See Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804, Doc. 149 (D. Colo. Oct. 28, 2020) (awarding $30,000 to a single class representative); *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671, Doc. 322 (D. Colo. July 20, 2020) (awarding $20,000 to each of the five class representatives). Moreover, in wage and hour class actions like this, an award of $30,000 is not unreasonable because of "the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases." *Scovil v. FedEx Ground Package Sys., Inc.,* No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6–7 (D. Me. Mar. 14, 2014) *See also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award to

8

a single class representative.); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500 to named plaintiffs in a wage and hour case) (citation omitted).

The proposed $30,000 incentive payment should be approved for the purposes of notice, with final consideration of the incentive payment left for the fairness hearing. Plaintiff will submit a declaration supporting the proposed award as part of the final approval process. *See Pliego*, 313 F.R.D. at 131 (analyzing appropriateness of service award after considering factors including risk of retaliation and impacts on future employment prospects).

### 6. Plaintiff is Represented by Competent and Experienced Counsel Who Believe This Settlement Is Fair and Reasonable

Class Counsel are experienced in complex litigation and this area of the law. *See* Exs. 5-6, Class Counsel Decs. Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

9

## IV. THE COURT SHOULD APPROVE THE SETTLEMENT ADMINISTRATOR AND THE NOTICE

### 1. Proposed Settlement Administrator

Class Counsel propose appointing Optime Administration to administer the settlement. Optime Administration has the experience necessary to administer the settlement, *see* https://www.optimeadmin.com/, and has provided a reasonable estimate to do so, *see generally* Ex. 7, Administrator Quote. Optime Administration should be appointed as the settlement administrator.

### 2. Proposed Notice

Pursuant to Rule 23(e)(1), the Court must direct reasonable notice to all class members. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001). These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A Rule 23(e)(1) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002); *see also Lucken Family L.P., LLLP v. Ultra Res., Inc.*, 2010 WL 2650037, at *3–4 (D. Colo. June 30, 2010) (notice sufficient where it informed class members of the nature of the lawsuit, their right to opt out and object, the settlement terms, and the binding effect of the settlement on class members who do not opt out).

The proposed notice easily meets this standard. It accurately describes the litigation, summarizes the terms of the Settlement, informs class members of their rights with respect to the Settlement—including the right to be excluded from the Settlement or object to the Settlement—and informs class members of the time and location of the fairness hearing. *See generally* Ex. 2, Notice. The proposed notice also informs class members of how their proposed monetary share of the Settlement is calculated:

> Each Class Member's individual payment amount is allocated on a pro rata basis based on the total number of weeks worked as a non-exempt employee at one of Defendant's corporate restaurants during the Class Period. Subject to final Court approval, the approximate dollar amount for each qualifying workweek based on all Settlement Class Members is [$INSERT].

*Id.* at 1.

Finally, the Settlement Class will have a reasonable amount of time, forty-five days from the date that notice is initially sent to (1) make a claim, (2) opt-out of the Settlement, or (3) object to the Settlement. Courts have routinely found a forty-five-day period to be reasonable and have even approved shorter periods. *See DeJulius*, 429 F.3d at 945-47 (32 days); *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 392663, at *5 (D. Colo. June 25, 2015) (45 days).

### V. THE COURT SHOULD PRELIMINARILY APPROVE CLASS COUNSEL'S REQUEST FOR FEES AND EXPENSES

Pursuant to Fed. R. Civ. P. 23(h), Class Counsel also intends to request 40% of the settlement fund, or $1,580,000.00, for attorney's fees and expenses. The proposed notice notifies the Class of this request. *See* Ex. 2, Proposed Notice § 9. For the reasons below, this request should be preliminarily approved and the Settlement Class should be notified.

**3. Legal Standard**

The Tenth Circuit has expressed "a preference for the percentage of the fund method."

*Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Under the percentage of the fund method, the fee award is based on a percentage of the total economic benefit obtained for the class. *See, e.g., Anderson v. Merit Energy Co.,* No. 07–cv–00916–LTB–BNB, 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009) (citing *Brown v. Phillip Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988)). In awarding these fees, the Court's discretion is guided by the "*Johnson* factors." *Gottlieb*, 43 F.3d at 482 n.4 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)). Not all of the *Johnson* factors are equal. Further, "rarely are all of the *Johnson* factors applicable," *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) (quoting *Brown*, 838 F.2d at 45), so "not all of them need [to] be considered" in every case, *Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998). The "most critical factor . . . is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quotations omitted).

4. **Application of the *Johnson* Factors**

   a. **Time and Labor Required**

   "[T]he complexity of the legal issues involved . . . justifies the time spent" by Class Counsel. *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014). As this Court knows, this case has been intensively litigated for over four years, *see Little*, 2024 WL 4455858, at *1–3, and is the result of two day-long mediations, as well as continued negotiations following the second mediation. *See* Ex. 5, Hood Dec. ¶ 13. As a result, Class Counsel expects to log at least 745 hours on this case. *See infra* at 16.

   b. **The Requisite Skill to Perform the Legal Service Properly and the Novelty and Difficulty of the Questions Presented**

   Class counsel are experienced litigators. *See* Exs. 5-6, Class Counsel Decs. This case raised numerous legal issues. *See generally e.g.,* Doc. 1-2, Operative Complaint; Doc. 1-6, Class Cert.

12

Order; *Little*, 2024 WL 4455858. In addition to the complex procedural issues litigated on class certification and removal, the substantive legal issues in this case "are governed by highly technical state and federal wage statutes and regulations." *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. April 25, 2015).

### c. Preclusion of Other Employment and Time Limitations

"There is an inherent preclusion of other work in litigating a complex case . . . on a contingency fee basis." *Id.* It is just "common sense" that billing the significant hours required by this matter forced the attorneys to forgo other work. *In re Crocs*, 2014 WL 4670886, at *3 ("Although Plaintiffs' Counsel does not provide specific examples of work they were forced to decline during the pendency of this action, common sense indicates that the nearly 3900 hours spent litigating this case came at the expense of time that could have been devoted to other matters.").

### d. The Customary Fee for Similar Work and Attorney's Fees Awarded in Similar Cases

Class Counsel's requested fees of 40% of the common fund is in line with the customary fee awarded to class counsel in a common fund settlement in this Circuit. "An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases" *Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, No. civ-12-1319-D, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015)), vacated on other grounds, 888 F.3d 455 (10th Cir. 2017). "Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis." *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*, Nos. civ 89–822–T & 1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993). Moreover, similar awards have been made in this District. *See, e.g., Davis v. Crilly,* 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (approving 37% in fees and expenses which was "well within

13

the normal range for a contingent fee award"); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (awarding 39% of settlement fund for attorneys' fees).

### e. The Contingency Nature of Class Counsel's Representation and the "Undesirability" of the Case

Plaintiffs' counsel took this case on a contingency basis and advanced all expenses in the litigation. *See* Ex. 5, Hood Dec. ¶ 9. Substantial fee awards are appropriate in cases such as this, where class counsel must "advance large amounts of time, money, and other resources to determine if any recovery might be had"—something "[m]ost attorneys" cannot do. *Shaw*, 2015 WL 1867861, at *7; *see also In re Thornburg Mortg. Inc. Sec. Litig.*, 912 F.Supp.2d 1178, 1256 (D.N.M. 2012) ("[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices" (alteration in original, quotations omitted)). Accordingly, "[a] contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful." *In re Qwest,* 625 F. Supp. 2d at 1151.

Absent possibility and precedent for such an award, there is a risk that cases like this one, with transient plaintiffs who work in lower-wage positions, would never see the inside of a court room. *See Shaw*, 2015 WL 1867861, at *7 ("contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case…. Access to the courts would be difficult to achieve without compensating attorneys for that risk." (citations and quotations omitted)).

**f. Potential Damages Involved and the Results Obtained**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar,* 506 U.S. at 114 (quotations omitted); *see also Brown,* 838 F.2d at 456 ("[T]he amount involved and the results obtained . . . may be given greater weight when . . . the recovery was highly contingent and . . . the efforts of counsel were instrumental in realizing recovery on behalf of the class."). As discussed above, the recovery for each class member is significant given the nature of the claims. *See supra* at 5-7. This is particularly true given the uncertainty of continued litigation. *Id.*

**g. The Experience, Reputation and Abilities of Class Counsel**

All Class Counsel have significant litigation experience, including experience in complex wage and hour class actions like this one. *See generally* Exs. 5-6, Class Counsel Decs.

**h. Nature and Length of the Professional Relationship with the Client**

Courts recognize that representing a plaintiff class means that attorneys may be forgoing repeat business. Thus, substantial awards are justified when, as with the Class in this case, "the likelihood that many class members will be seeking additional representation from Class Counsel is slim." *Shaw*, 2015 WL 1867861, at *7. This is particularly true because "wage claims . . . do not lend themselves to continuous, long-term attorney-client relationships." *Id.*

Class Counsel entered into a contingency agreement with the named Plaintiff. *See* Ex. 5, Hood Dec. ¶ 9; *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1114 (D. Kan. 2018) ("counsel have indicated that many plaintiffs in this case agreed to contingent-fee arrangements that allowed for fees of at least 40 percent of any recovery"). As for the Class, it will be notified of the fee request and have the opportunity to object. *See* Ex. 2, Notice § 9.

5. **A Lodestar Crosscheck Also Demonstrates that Class Counsel's Request Is Reasonable**

"Courts using the percentage method will often crosscheck the requested award with the lodestar amount." *Shaw*, 2015 WL 1867861, at *8. However, the Court in the exercise of its discretion and in light of the facts of the case may choose to rely entirely on the percentage method. *See Uselton*, 9 F.3d at 853 (distinguishing common fund cases where the percentage method is permissible rather than the lodestar method and approving fee award without considering the lodestar); *see also CompSource Oklahoma v. BNY Mellon, N.A.*, No. civ 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.").

Class Counsel's requested fee award in this action is equal to the lodestar with a 2.75 multiplier. This is in the range of normal; Courts in this district award multipliers between 2.5 and 4.6. *See Mishkin v. Zynex, Inc.,* No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting District of Colorado cases approving multipliers ranging from 2.5 to 4.6); *Rothe v. Battelle Mem'l Inst.*, No. 1:18-CV-03179-RBJ, 2021 WL 2588873 (D. Colo. June 24, 2021) (3.61 multiplier).

6. **Class Counsel's Hours and Rates Are Reasonable**

Class Counsel expect to log at least 745 attorney hours at the following hourly rates:

| Attorney Name | Hours Worked | Hourly Rate |
|---|---|---|
| Brian Gonzales | 310 | $800 |
| Alexander Hood | 435 | $750 |

*See* Ex. 5, Hood Dec. ¶ 14; Ex. 6, Gonzales Dec. ¶ 7. Given the length and complexity of this litigation, the hours spent were reasonable. Moreover, the hourly rates are also reasonable given

16

the education and experience of Class Counsel. *See generally* Ex. 5, Hood Dec. ¶¶ 2-9, 15; Ex. 6, Gonzales Dec. ¶ 2-9.

### 7. The Multiplier is Reasonable

Class Counsel's estimated lodestar is $574,250.00. *Supra* at 16. The total fee request of $1,580,000.00 compared to the lodestar creates a lodestar multiplier of 2.75, which is well within the range of multipliers typically awarded by courts in this Circuit. *See Rothe*, 2021 WL 2588873 (3.61); *In re Crocs*, 2014 WL 4670886, at *6; *see also Mishkin,* 2012 WL 4069295, at *2 (collecting District of Colorado cases approving multipliers ranging from 2.5 to 4.6).

## VI.   CONCLUSION

For the forgoing reasons, the Motion should be granted.

Respectfully submitted November 15, 2024

                *s/Alexander Hood*
                Alexander Hood
                HOOD LAW OFFICE, PLLC
                1312 17th Street # 1028
                Denver, CO 80202
                Telephone: (720) 381-4142
                Alex@HoodLawPLLC.com

                Brian D. Gonzales
                BRIAN D. GONZALES, PLLC
                2580 East Harmony Road, Suite 201
                Fort Collins, CO 80528
                Telephone: (970) 214-0562
                bgonzales@coloradowagelaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on November 15, 2024, a true and correct copy of the foregoing was served electronically on all counsel of record.

                                              *s/Alexander Hood*
                                        _____