IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03056-CYC

JEFFREY LITTLE, individually and on behalf of all similarly situated persons,

    Plaintiff,

v.

WENDY'S INTERNATIONAL, LLC,

    Defendant.

---

## ORDER

---

Before the Court is plaintiff Jeffrey Little's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"). ECF No. 47. For the reasons that follow, the Motion is **GRANTED in part**.

## BACKGROUND

### I.    Procedural History

On October 25, 2020, the plaintiff filed a putative class-action complaint in state court alleging that Wendy's Digital LLC and The Wendy's Company failed to provide him and other Wendy's restaurant employees required meal and rest breaks. ECF No. 1-1. The complaint asserted claims for violations of the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 *et seq.*; for violations of the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101 *et seq.*; and for civil theft in violation of Colo. Rev. Stat. § 18-4-405. *Id.* at 6-7. Some three months later, the plaintiff filed an amended complaint, naming the defendant in this action, Wendy's International, LLC, as the new, sole defendant. ECF No. 1-2. After over a year of discovery and related litigation, *see* ECF No. 1-8 at 6-9, on May 12, 2022, the plaintiff moved for class certification in

1

the state court. ECF No. 1-4. On October 31, 2023, the state court granted the motion, certifying a class pursuant to Colo. R. Civ. P. 23(a) & (b)(3) of

> ALL CURRENT AND FORMER NON-EXEMPT EMPLOYEES WHO WORKED FOR DEFENDANT IN COLORADO FROM OCTOBER 25, 2014 TO THE PRESENT.

ECF No. 1-6 at 17. The state court appointed the plaintiff as class representative and plaintiff's counsel as class counsel. *Id.*

Less than three weeks later, the defendant removed the case to this Court, predicating jurisdiction on the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, 1711–15. ECF No. 1. The parties consented to the jurisdiction of a magistrate judge, ECF No. 19, and the plaintiff filed a motion to remand the action to state court. ECF No. 16. While the motion was pending, the parties unsuccessfully attempted to resolve the case via mediation. ECF No. 30 ¶ 4. With that path to resolution proving unavailing, then-Chief Magistrate Judge Michael E. Hegarty decided the motion to remand, granting it because the removal was untimely. *Little v. Wendy's Int'l, LLC*, No. 23-cv-03056-MEH, 2024 WL 1829268, at *3 (D. Colo. Apr. 12, 2024). The defendant appealed and, six months later, the Tenth Circuit issued an order and judgment affirming Judge Hegarty's decision. *Little v. Wendy's Int'l, LLC*, No. 24-1232, 2024 WL 4455858, at *6-7 (10th Cir. Oct. 10, 2024) (unpublished). The parties, however, did not simply sit idle awaiting the Circuit's decision; instead, they headed back to the mediation table for two full days, ultimately reaching an agreement in principle to resolve this case with the mediator's assistance. ECF No. 45 ¶¶ 5-7. Thus, four days after the Circuit's order issued, the parties requested that the case be remanded to this Court to effectuate their settlement. ECF No. 43 at 1-2. The Circuit held that the order and judgment did not divest this Court of jurisdiction to conduct further proceedings, stayed its mandate, and remanded the case for the limited purpose of considering the parties' proposed settlement. *Id.* at 2-3.

On November 15, 2024, the Motion followed. ECF No. 47. Some two months later, this case was reassigned to the undersigned upon Judge Hegarty's retirement, ECF No. 49, and the Court held a hearing on the Motion on February 4, 2025. ECF No. 51.

II.     **The Settlement Agreement**

The settlement agreement, attached to the Motion, defines the settlement class as

> All current and former nonexempt restaurant employees on record who worked for any week or more as a nonexempt employee at one of Wendy's corporate restaurants in Colorado during the class period (October 25, 2014 to the date of the preliminary approval order).

*See* ECF No. 47-1 §§ I.G, III.A. In exchange for a waiver and release of class members' claims, *id.* §V.C, the agreement establishes for the defendant both a liability ceiling of $3.95 million and a liability floor of attorneys' fees and costs, a $30,000 service award to the class representative, administration costs, plus 50% of the "Net Settlement Amount," defined as the difference between the $3.95 million ceiling and the other aforementioned fees, costs, and awards. *See id.* §§ I.L–I.N, V.D. The amount to be distributed to each class member will be a pro rata share of the Net Settlement Amount, calculated according to a formula factoring in the number of weeks the member was employed at a Wendy's. *Id.* § V.D.7.b. If the formula yields a sum for the entire set of participating class members below the liability floor, each such class member is entitled to a proportional pro-rata increase in compensation until the total payout equals the liability floor. *Id.* § V.D.7.b. Class members must submit a signed claim form within forty-five days of being notified of the settlement to receive benefits. *Id.* §§ I.T, V.D.7.c & e.

The parties have agreed to a payment of attorneys' fees to class counsel of up to 40% of the liability ceiling, which would be $1.58 million. *Id.* § V.D.2.a. The agreement designates Optime Administration as the settlement's third-party administrator to disseminate notice to the class; process claim forms, opt-out requests, and objections; calculate the pro rata share for each

3

class member who submits a claim form; set up and make distributions from the settlement fund; and calculate and withhold any applicable taxes, among other things. *Id.* § V.A.1.

## ANALYSIS

Approval of a class-action settlement is a two-step process. Relevant here, at the first stage, a district court merely decides "if giving notice" to the class "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Later, "[i]n the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms." *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (citing Fed. R. Civ. P. 23(e)(2)).

As to the second of the first-stage inquiries, the state court already certified a class substantially similar to the one the parties seek here under state law mirroring Fed. R. Civ. P. 23. ECF No. 1-6 at 6-16. And given that "[a]n order entered by a state court should be treated as though it had been validly rendered in the federal proceeding," *Hart v. Capgemini U.S. LLC Welfare Benefit Plan Admin. Doc.*, 547 F. App'x 870, 872 (10th Cir. 2013) (unpublished) (quotation marks omitted), the class the parties propose is one likely to be certified for purposes of judgment on the settlement proposal. After all, its only changes from the state-court class was to end the class period as of the date of this order and to require a member to have worked at a Wendy's for at least a week. *See* Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims,

4

defenses, or issues regarding which certification was granted."). Nothing about that change indicates that the state court's decision to certify the class should be undone.

Turning to the first of the inquiries, Rule 23(e)(2) provides four factors for district courts to consider for final approval of a settlement, namely whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

In addition, the Tenth Circuit "has further noted four factors for evaluation by a district court," to wit:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*In re Samsung Top-Load Washing Machine Mktg., Sales Prac. and Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (emphasis removed). At this stage, "[t]he standards for preliminary approval of a class settlement are not as stringent as those applied for final approval." *Ross*, 323 F.R.D. at 659. Under that rubric, the proposed settlement passes muster.

I.     **Procedural Factors**

Rule 23(e)(2)(A) and (B) "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)&(B) advisory committee's note to 2018 amendment. That rubric also encompasses the first of the Tenth Circuit's additional factors. These factors favor approval of the settlement agreement, at least at this stage.

Regarding adequacy of the class representative, a non-exempt former Wendy's employee, the state court previously found that he had no conflicting interests with the class and was sufficiently aligned with it to adequately represent its interests. ECF No. 1-6 at 10-11. At the motion hearing, class counsel also represented that the class representative had been involved extensively over the four years of litigation in this case.

The state court also found that class counsel were "competent and experienced." *Id.* at 11. The materials submitted in support of the Motion further bear that out; one of the plaintiff's attorneys, for instance, has been engaged exclusively in wage and hour litigation for seventeen years and been appointed class counsel in over a dozen lawsuits in that subject area. ECF No. 47-6 ¶¶ 3, 6. The plaintiff's other attorney boasts similar experience in class-action litigation. ECF No. 47-5 ¶ 8. Of course, "the focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A)&(B) advisory committee's note to 2018 amendment. Some of that is impossible to evaluate now, given that it is not clear how widespread class relief will be. But the efforts of counsel thus far are clearly adequate, including significant review of discovery, including depositions and thousands of documents; surveying potential class members; litigating discovery issues; expert consultation; successfully litigating a motion for class certification; vigorously (and successfully) litigating remand issues in this Court

and the Tenth Circuit; and, finally, pursuing mediation while the case awaited the Tenth Circuit's decision. *See* ECF No. 47-1 § IV.C; ECF No. 47-5 ¶¶ 10-13. Such a record sufficiently establishes the likely adequacy of class counsel's representation.

In addition, the settlement agreement appears to be the product of arm's-length negotiations and of fair and honest negotiation, which is "[t]he primary procedural factor courts have considered at preliminary approval." 4 Newberg and Rubenstein on Class Actions § 13:14 (6th ed.). "A settlement is likely to be found to be the result of non-collusive, arms-length negotiations if it is preceded by a lengthy period of adversarial litigation and substantial discovery and the settlement is the product of negotiation before a third-party mediator." *German v. Holtzman Enters., Inc.*, Civ No. 19-cv-03540-PAB-STV, 2023 WL 3585212, at *9 (D. Colo. May 22, 2023) (citing 4 Newberg and Rubenstein on Class Actions § 13:14). So it is here: the parties engaged in both state and federal litigation for some four years in this case before reaching a settlement after days of assistance from Anne Marie Estevez, a third-party mediator. ECF No. 47-5 ¶¶ 10, 13; *see* Fed. R. Civ. P. 23(e)(2)(A)&(B) advisory committee's note to 2018 amendment ("[T]he involvement of a neutral . . . in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

There is a note to add. Where a settlement has a "clear sailing" agreement in which "the defendant 'agree[s] not to object to an award of attorneys' fees' specified in a settlement agreement," and a "kicker" provision returning unclaimed monies to the defendant, the Tenth Circuit requires "heightened scrutiny" for final approval, mandating that a district court "carefully consider whether the settlement was negotiated at arms-length" and "the structure of the negotiation process, including whether the parties negotiated attorneys' fees and costs while negotiating class compensation." *In re Samsung*, 997 F.3d at 1088, 1089 & n.11, 1091 (quoting

7

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). That requirement may not apply here; *In re Samsung*'s "kicker" provision was a general reversion to the defendant from the class compensation fund, whereas the settlement here is a hybrid "common fund" (with the liability floor) and "claims-made" (with amounts up to the liability ceiling) settlement. *See* ECF No. 47-1 § V.D.7; *see also* 4 Newberg and Rubenstein on Class Actions § 13:7. Nevertheless, the concern that "claims-made settlements" are "less justifiable when combined with . . . clear sailing agreements" remains salient. 4 Newberg and Rubenstein on Class Actions § 13:7. But because at this stage, the record points primarily to the settlement being the product of arms-length negotiations, the procedural factors overall favor preliminary approval.

## II.     Substantive Factors

Fed. R. Civ. P. 23(e)(2)(C) and (D) "focus on what might be called a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "The relief that the settlement is expected to provide to class members is a central concern." *Id.* The second, third, and fourth of the Tenth Circuit's additional factors also fit under this rubric. *See In re Samsung*, 997 F.3d at 1087. The Court considers these factors in turn.

A. <u>Costs, Risks, and Delay of Trial and Appeal and Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt</u>

The parties' settlement agreement explicitly recognizes significant cost, risk, and delay if the case were to proceed to trial. *See* ECF No. 47-1 § IV. Indeed, this case has already been pending for more than four years between state and federal court even without dispositive motions having been filed. The parties also recognize that the outcome of the litigation is far from certain for either side. *See id.* §§ IV.E, IV.J. Indeed, the state court, in certifying the class, recognized potential problems of proof having to do with the method of recording breaks and whether the plaintiff would be able to adduce sufficient class-wide proof as to that issue in a

class-wide trial. *See* ECF No. 1-6 at 12-15. At this point, then, there are sufficient indicia of uncertainty if this litigation were to progress to trial to favor preliminary approval.

B. <u>Whether the Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation</u>

Class counsel retained a Ph.D. statistician to build a damages model from payroll records that had previously been provided and, according to that model, the liability ceiling of $3.95 million represents 83% compensation for all of the missed breaks of the class. ECF No. 47-5 ¶ 12. Given the risks and potential future delays that the parties recognize, *see* ECF No. 47-1 § IV, at this point, such analysis supports preliminary approval of the settlement.

To be sure, at final approval, the actual benefit to the class may not be that full 83%. *See In re Samsung*, 997 F.3d at 1091 (instructing courts in "heightened scrutiny" cases to "take special care to assure the class members receive fair and reasonable compensation based on record evidence of their actual damages and the likelihood of success at trial"); *see also* Fed. R. Civ. P. 23(e)(2)(C)&(D) advisory committee's note to 2018 amendment (noting that "actual claims experience may be important"). But, at this stage, the proposal is likely to award significant, concrete relief to the class that would outweigh the uncertain possibility of future relief. As such, this factor favors preliminary approval.

C. <u>The Judgment of the Parties That the Settlement Is Fair and Reasonable</u>

The parties stipulate that they believe the settlement is fair and reasonable. ECF No. 47 at 9. At this point, then, this favors preliminary approval. *German*, 2023 WL 3585212, at *10.

D. <u>The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims</u>

With respect to this factor, "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e)(2)(C)&(D) advisory committee's note to 2018 amendment.

9

But "a requirement that potential claimants 'fill out a form in order to collect from the settlement fund' seldom raises such concerns." *T.K. Through Leshore v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *14 (N.D. Ill. Mar. 25, 2022) (quoting 4 Newberg and Rubenstein on Class Actions § 13:53). That is the method the parties propose here, requiring a signed form with identifying information. *See* ECF No. 47-3. As such, the claim method is not unduly demanding.

"In addition to the method of submitting a claim, courts must also consider how claims are paid out." *T.K. at *14*. "Courts are 'especially wary' of complex claims processes paired with either 'claims-made settlements,' distributing only the 'amount actually claimed by the class members,' or reversionary funds." *Id.* (quoting 4 Newberg and Rubenstein on Class Actions § 13:53). "On the other hand, a settlement that requires defendants to disgorge a predetermined sum 'is more likely to be found fair, reasonable, and adequate.'" *Id.* (quoting 4 Newberg and Rubenstein on Class Actions § 13:53). Here, although the settlement agreement is tied somewhat to the number of filed claim forms, it has a liability floor, mitigating the concern that the parties are engaging in gamesmanship to dissuade potential claimants from taking part in relief. In addition, the claim form is relatively simple. As such, this factor favors granting preliminary approval.

E. <u>The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment</u>

Class counsel requests an attorney's fees award of up to 40% of the maximum possible settlement fund of $3.95 million, that is, $1.58 million, to be paid after the resolution of any appeals. *See* ECF 47-1 §§ I.J, V.D.2.

As such, the timing is typical in that the "fees are sought in conjunction with settlement approval and are paid simultaneously to the class's recovery." 4 Newberg and Rubenstein on Class Actions § 13:54.

As to the substantive terms of the award, to the extent that the class's recovery hits the liability ceiling, the award may very well be reasonable, if somewhat higher than average. *See Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, No. CIV–12–1319–D, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases."); *see also* 5 Newberg and Rubenstein on Class Actions § 15:83 (noting that "recent empirical data on fee awards demonstrate that percentage awards in class actions are generally between 20–30%, with the average award hovering around 25%" and indicating that "50% of the fund is the upper limit on a reasonable fee award from any common fund"). According to the motion, this award would represent a lodestar multiplier of 2.75, ECF No. 47 at 17, which "is consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1266 (10th Cir. 2023) (quoting *Voulgaris v. Array Biopharma, Inc.*, No. 17-CV-02789-KLM, 2021 WL 6331178, at *14 (D. Colo. Dec. 3, 2021)).

If the claim rate is low, though, the "difficult 'percentage of what' situation arises" because some of that maximum possible settlement fund will "never" have "left the defendant's coffers." 5 Newberg and Rubenstein on Class Actions § 15:70. And in such situations, courts have been divided as to whether to evaluate the percentage with respect to the total possible fund, as class counsel does here, or whether to evaluate it with respect to the funds actually distributed to the class. *See id.*; *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award."); *In re Samsung*, 997 F.3d at 1094 (commending the district court for checking the attorney's fees award against "the actual cost of the Settlement

11

Agreement to Samsung"). Measured by the latter rubric, the award could exceed the 50% threshold often quoted as an "upper limit" on attorney's fees. 5 Newberg and Rubenstein on Class Actions 15:83. Nevertheless, given that the settlement agreement "is not contingent on approval" of class counsel's requested fees and "even if the Court approves a lesser amount, . . . remain[s] enforceable," ECF No. 47-1 § V.D.2.a, those concerns, which cannot be fully resolved without knowing the actual class recovery, should not preclude notice to the class.

In the same vein, although class counsel requests preliminary approval of the amount of attorney's fees requested, *see* ECF No. 47 at 11-17, the Court need not do so to approve notice of the settlement agreement. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1); *see also Rodriguez v. Penske Logistics, LLC*, No. 2:14–CV–02061–KJM–CKD, 2017 WL 4132430, at *10 (E.D. Cal. Sept. 19, 2017) (deferring attorney's fees consideration until the final fairness hearing). Given the uncertainty as to how the requested attorney's fee will compare with actual relief obtained, deferring consideration of that issue until the final hearing is the proper course here.

F.  Whether the Proposal Treats Class Members Equitably Relative to Each Other.

The settlement agreement requires a pro rata distribution to the class based on weeks worked. ECF No. 47-1 § V.D.7.b. Because it awards portions of the settlement fund proportional to those weeks, it is likely to treat class members equitably relative to one another.

As for the class representative, the basis for his proposed $30,000 award is not entirely clear. The sum is higher than those approved in at least some other comparable cases, *see German*, 2023 WL 3585212, at *10 (noting that "[a]n award of $10,000 is within the range of awards that courts have approved in similar cases"), and the cases that class counsel cites in support of this award seem somewhat distinguishable. This is not, for example, a $76 million settlement where a proposed $100,000 award was halved to $50,000, *Van Vranken v. Atlantic*

*Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995), or a $45 million settlement that awarded each class representative the lesser sum of $25,000, *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *1, 17 (N.D. Cal. Jan. 26, 2007). And in *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *1, 7 (E.D.N.Y. Feb. 18, 2011), the class representative who received a $30,000 award asserted not only wage claims, but also claims for sex discrimination and retaliation, which typically have higher awards. *See* 5 Newberg and Rubenstein on Class Actions § 17:8 (noting that "[t]he employment discrimination numbers" for incentive awards "are far higher than the mean or median numbers").

Nevertheless, the Court is mindful that generally, "in wage and hour cases" there are "higher awards" because of "the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases, employment or not." *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (approving awards of up to $20,000). Moreover, class counsel indicates that a more detailed declaration will be filed prior to the final fairness hearing supporting the award. ECF No. 47 at 9. Given that it very well could be — as counsel indicated at the motion hearing in this case — that the class representative's service was exceptionally good and fraught with risk so as to warrant the proposed award, and given that courts have, in all events, preliminarily approved class-action settlements with more serious concerns about service awards than these, the amount of the service award should not prevent preliminary approval here. *See West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *12 & n.10 (E.D. Cal. Jun. 13, 2006).

On balance, then, the Rule 23(e)(1) factors indicate that notice of the settlement agreement ought to be provided to the class.

### III.     Notice

That leaves the issue of the method and contents of notice itself. As a threshold matter, the parties propose that Optime Administration administer this settlement. Optime has provided a reasonable estimate, *see* ECF No. 47-7, and has been approved before, *see, e.g.*, *Miles v. BKP Inc.*, Civ No. 18-cv-01212-PAB-MEH, 2024 WL 2724007, at *2 (D. Colo. May 28, 2024). The Court approves Optime as the settlement administrator here.

Regarding the method of notice, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where, as here, the class is certified under Fed. R. Civ. P. 23(b)(3), that reasonable manner is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Due process requires a similar effort to be fair to the class. *See German*, 2023 WL 3585212, at *11 (citing *DeJulius v. New England Heath Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The "rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court." Fed. R. Civ. P. 23(c)(2)(B) advisory committee's note to 2018 amendment. Here, the parties propose a two-tiered system of notice. For those class members with a cell phone number on file, the parties propose to send a text message informing the class member of the settlement and directing them to the settlement website's URL. For those without a cell phone number on file, the parties propose to send a postcard to the member's last known address containing a summary description of the settlement and the URL of the settlement website. *See* ECF No. 47-1 § V.B.2. At the motion hearing in this matter, class counsel represented that in their experience, given the often-transient nature of members of this class, a cell phone number would be the best,

14

most permanent method of contacting a class member. In addition, in response to concerns the Court expressed at the motion hearing, the parties agreed that they could also set up a Spanish version of the settlement website to reach Spanish speakers within the class. Without a reason to doubt the parties' representation, the proposed method of giving to the notice to the class appears to be the best practicable under the circumstances.

As for the notice's content, "[w]hile due process and Rule 23(e) require notice of a settlement to be given, the content and form of that notice are left to the court's discretion." *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1109 (10th Cir. 2001) (internal quotation marks omitted). "The standard for the settlement notice under Rule 23(e) is that it must fairly apprise the class members of the terms of the proposed settlement and of their options." *Id.* (internal quotation marks omitted). The parties' proposed notice satisfies this basic purpose. It defines the class, ECF No. 47-2 at 5, clearly describes the options available to class members, including how to opt out or object to the proposed settlement, *id.* at 4, describes the essential terms of the proposed settlement, *id.* at 2, and indicates the time and place of the final fairness hearing, *id.* at 6-7. *See* Manual for Complex Litigation § 21.312 (describing proper contents of notice).

Given the concerns expressed above, though, two additional pieces of information ought to appear in the notice: "information regarding attorney fees" and "any special benefits provided to the class representatives." *Id.* Providing such information to class members will enhance their ability to evaluate the fairness of the settlement more fully. In addition, because "the class must obviously receive notice of the proposed fee prior to the objection deadline" to make "the right to object" to attorney's fees "meaningful, . . . the court should provide sufficient time *after the full fee motion is on file* to enable potential objectors to examine the motion." *Chieftain Royalty Co. v. SM Energy Co.*, 100 F.4th 1147, 1158 (10th Cir. 2024). As such, class counsel should file and

15

make available on the settlement website their petition for attorney's fees thirty days prior to the deadline to object to the settlement. *See id.* at 1158 n.15 (collecting cases indicating that fee request should be filed prior to objection deadline); *see also* 5 Newberg and Rubenstein on Class Actions § 15:13 (characterizing 35 days prior to objection as a "more realistic time frame" to allow review of attorney's fees motion). The notice should also inform class members of the timing of the availability of the motion to apprise them and enable them to evaluate the settlement thoroughly.

For the foregoing reasons, it is hereby ORDERED:

1. The Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 47, is **GRANTED in part**.
2. The Court finds that it will likely be able to approve the proposed Settlement (ECF No. 47-1) under Rule 23(e)(2); and certify the class for purposes of judgment on the proposed Settlement (ECF No. 47-1), and therefore the issuance of notice to the class and the setting of a final approval and fairness hearing is justified.
3. The settlement is therefore preliminarily approved pursuant to Rule 23(e), subject to final approval.
4. For settlement purposes only, the Court amends the current class definition under Rule 23(b)(3) as follows:

   > All current and former nonexempt restaurant employees on record who worked for any week or more as a nonexempt employee at one of Wendy's corporate restaurants in Colorado during the class period (October 25, 2014 up to the date of this Order).

5. Optime Administration, a third-party settlement/claims administrator, is approved as the Class Administrator.

6. The Court defers consideration of the attorney's fees award to the Final Fairness Hearing.

7. The claim form attached to the Motion, ECF No. 47-3, is hereby approved.

8. The proposed method of notice is approved, *i.e.,* text messages and postcards directing class members to an online notice and claim form. The settlement website shall also have a Spanish translation available.

9. Class counsel shall file a motion requesting approval of an amended notice within ten days of this Order. The amended notice shall contain additional questions and answers detailing the attorney's fees to be sought, the timing of the filing of any motion for attorney's fees as well as how class members can review that motion, and the service award to the class representative.

10. Once the amended notice is approved, the Court will order the Parties and the Settlement Administrator to proceed with notice to the Class consistent with the terms of the Settlement.

11. No later than 30 days prior to the deadline for objections from class members, Plaintiff's Counsel shall file any motion for recovery of attorney's fees and expenses from the settlement fund and post that motion conspicuously on the settlement website.

12. The Court hereby sets a final approval and fairness hearing pursuant to Rule 23 for July 21, 2025 at 9:00 a.m.

13. No later than 21 days prior to the date of the fairness hearing, Plaintiff and Plaintiff's Counsel shall file their motion for final approval of the Settlement pursuant to Rule 23(e).

Dated this 19th day of February, 2025.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge